Robert W. MILLER et al., Plaintiffs,

v.

The FEDERAL LAND BANK OF SPOKANE, a foreign corporation, Defendant.

D. E. LACKEY and Dora Rose Lackey, Plaintiffs,

v.

The FEDERAL LAND BANK OF SPOKANE, a foreign corporation, Defendant.

Civ. Nos. 1139 and 1140.

United States District Court, D. Montana, Billings Division.

March 6, 1974.

William T. Kelly, Billings, Mont., for plaintiffs in both cases.

George C. Dalthorp, Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for defendants in both cases.

**MEMORANDUM AND ORDER**

BATTIN, District Judge.

Presently pending in these actions are motions by the plaintiffs and the defendant for summary judgment.

The material facts of these cases are undisputed. On June 6, 1966, the plaintiff Millers borrowed the sum of $47,800.00 from the defendant Federal Land Bank. The loan was secured by a certain federal farm loan amortization mortgage, and the agreed rate of interest contained therein was five and one-half per cent per annum. The mortgage was secured by approximately 2,600 acres of farm land near Hysham, in Treasure County, Montana. The plaintiffs have made all of their mortgage and interest payments since execution of the mortgage, and the defendant is not contending that any of the required mortgage payments have not been duly made by the plaintiffs.

In August of 1972, the Burlington Northern Inc., as party plaintiff, filed a condemnation action against 8.095 acres of farm land owned by the aforesaid Millers, as defendants, for the express purpose of building a spur railroad track for the transportation of coal.

This condemnation case was not tried. Instead, a settlement was negotiated in the sum of $31,400, and the allocation of funds on the Burlington Northern Inc. settlement check issued to the Millers was allocated as follows:

| "Land | $ 4,708.00 |
| Damages | $26,692.00 |
| | $31,400.00" [1] |

It is the contention of the defendant Federal Land Bank that it is entitled to receive the entire sum of the settlement

---

[1] The facts summarized here and referred to by the Court throughout this memorandum and order are those of Miller, et al. v. The Federal Land Bank of Spokane, Civil No. 1139, Billings Division. Although the figures and dates differ, the same factual pattern has been developed in Lackey, et al. v. The Federal Land Bank of Spokane, Civil No. 1140, Billings Division. Both cases involve the same question of law, and the Court's finding in that regard is equally applicable to both of the above cases.

proceeds, namely $31,400, to be applied against the mortgage debt. In fact, the defendant demanded that it receive one-half of the $31,400 settlement from Burlington Northern Inc. This contention and subsequent demand are predicated upon the following provision contained in the mortgage:

"If any of the mortgaged property shall be taken under the right of eminent domain, the mortgagee shall be entitled at its option to receive all compensation for the portion taken and damages to the remaining portion, to be applied by the mortgagee upon the indebtedness hereby secured in such manner as it shall elect."

The plaintiffs oppose this contention of the defendant, and the Court concludes with the plaintiffs that the above provision does not, as a matter of law, entitle the defendant to receive any part of the settlement proceeds. The Court's conclusion is supported by several independent rationales.

First, the 8.095 acres of the plaintiffs was not taken under a judicially determined right of eminent domain and therefore does not legally fall within the terms of defendant's mortgage provisions. The Court takes judicial notice of Civil Cause No. 1071, filed by the Burlington Northern Inc., plaintiff, against 8.095 acres of agriculture land in Treasure County, Montana; Robert W. Miller and Patricia M. Miller, his wife; the Federal Land Bank of Spokane; and all unknown owners, as defendants. A settlement was made in this action out of Court. There exists no judicial determination or finding by the Court that public interest required the taking of such land. In short, the right of eminent domain by condemnation has not been exercised in relation to the 8.095 acres.

Despite the unambiguous language of the clause in contention, the defendant contends that the property was "taken" under the right of eminent domain just as certainly as if the condemnation proceeding had run its course. The Court rejects this contention. Assuming, *arguendo*, that the language of the clause in the contract was ambiguous, the Court would be compelled to construe the clause most strongly against the party which prepared the contract, and liberally in favor of the party who is not the author. In short, the Court would construe the language of the clause liberally in favor of the plaintiffs and most strongly against the defendant. In preparing the clause, the defendant could have easily included language directing the Court to construe out-of-court settlements arising in condemnation actions as compensation for property taken under the right of eminent domain. The defendant did not include such language.

As a second and independent ground for granting relief to the plaintiffs, the Court concludes that a clause appearing in a federal loan which purports to entitle the mortgagee to receive all compensation under a right of eminent domain and to apply such funds upon the existing mortgage indebtedness is not valid. In 1966, the loan was made at the interest rate of five and one-half per cent per annum. Obviously, the credit record of the plaintiffs was sufficiently good or the $47,800 loan would not have been made by the defendant. It is also apparent to the Court that the 2,600 acres of farm land was sufficient security to ensure the repayment of the loan.

The plaintiffs have made all of their mortgage payments and the amount of the mortgage has been substantially reduced. The value of these 2,600 acres has increased since 1966, and the defendant, in fact, admits the same on page 3 of "Defendant's Brief In Support of Motion for Summary Judgment", which reads in part:

"While the bank concedes that its security position with respect to the specific mortgages in question is not threatened * * *"

In fact, it could be argued that the right-of-way easement obtained by the Burlington Northern Inc. may have in-

creased the value of the remaining mortgaged acres. The Court can state without equivocation that the 8.095 acres constitute a mere 0.31% of the entire 2,600 acres under mortgage. The Court is shocked by the defendant's efforts to seek one-half of the proceeds of the plaintiffs' settlement of $31,400 (namely, $15,700) because the plaintiffs have granted a right-of-way easement to the railroad for 0.31% of the mortgaged 2,600 acres. The Court is particularly shocked in light of the fact that the settlement check allocated only $4,708 for land.

Also shocking is the fact that the mortgage clause has not been uniformly enforced by the defendant. In answer to the plaintiffs' interrogatories, the defendant confesses that it has not exercised its option to collect under the contract in all instances. In fact, prior to 1960, most instances where the option was exercised were cases where installment payments were delinquent. No such mortgage installment payments were delinquent in the cases at issue before this Court.

The Court can properly inquire into this matter, as pointed out in Greene County National Farm Loan Association v. Federal Land Bank of Louisville, D. C., 152 F.2d 215 (1945).

> "This is not to say that there may be no judicial checks to the arbitrary and capricious actions on the part of the bank, to proceedings in violation of law or tainted with fraud, * * *" Greene County, supra at 220.

The Greene County case wisely pointed out that the dominant purpose of Congress in creating the Federal Land Bank was to assure farmers of the opportunity to borrow money on long-term mortgages at minimum interest rates.

The Federal Farm Loan Act did not have as its dominant purpose a "profit-making motive." As stated in the Greene County case,

> "The profit-making motive is subordinated to the rendition of an effective long-term mortgage credit service to farmers at the lowest possible cost. 1st Ann.Rep. of Federal Farm Loan Board, H.Doc. 714, 65th Cong., 2nd Sess., p. 13." Greene County at 219.

The uncontested facts in these cases do not illustrate a Federal Land Bank desiring to be just and fair. Nor do the facts illustrate that the defendant's profit motive was in fact subordinated to the primary goal of the rendition of an effective long-term mortgage credit service to the farmers at the lowest possible cost with minimum interest. The Court can only presume that if the national economy were not in a period of inflation and the 5½% interest rate were still an attractive rate to the defendant land bank, these cases would not be here, as the defendant would be content with its mortgage liens on the remaining lands without attempting to go after one-half of the settlement proceeds. The defendant bank merely desires to pre-accelerate the plaintiffs' mortgage payments and reloan the same money to the plaintiffs or other "good members" of the association at a much higher interest rate.[2]

■ In summation, it appears to the Court that the defendant bank has no right to share any portion of the settlement proceeds as the remaining 2591.905 acres are more than adequate to secure the balance of the note. The lender simply has ample security.

For the foregoing reasons, it is ordered that the defendant's motions for summary judgment be and are denied.

It is further ordered that the plaintiffs' motions for summary judgment be and are granted.

It is further ordered that counsel for the plaintiffs submit to the Court, within thirty (30) days of the filing of this memorandum and order, judgments in accordance with this memorandum and

---

2. The Court notes that the plaintiffs, like all who borrow from the defendant, are required to become members of the defendant through the purchase of its stock. See 12 U.S.C. § 2031.

order. It is the Court's intention that the plaintiffs be allowed a reasonable rate of interest on any monies wrongfully withheld by the defendant.

It is by the court further ordered that the plaintiffs be and they are hearby awarded their actual costs and reasonable attorneys' fees for the maintenance of these actions.